### AVINA v. UNITED STATES.
### Civ. No. 1460.

United States District Court
W. D. Texas, El Paso Division.
Dec. 9, 1953.

Richard C. White, George Rodriguez, and Wellington Chew, El Paso, Tex., for plaintiff.

Holvey Williams, Asst. U. S. Atty., El Paso, Tex., for defendant.

THOMASON, District Judge.

Roberto Avina, Sr., individually and as next friend of Roberto Avina, Jr., sued the United States Government for damages occasioned by the drowning of Roberto Avina, Jr., in the Franklin Canal, in El Paso County, Texas. The following are my findings of fact and conclusions of law:

## Findings of Fact

### I.

On May 23, 1952, Roberto Avina, Jr., a boy 8½ years of age, son of the plaintiff herein, drowned in Franklin Canal in the southern part of El Paso, Texas.

### II.

Franklin Canal runs through the south part of El Paso and is owned and operated by the United States Government under authority of different acts of Congress.

### III.

Said canal is an essential part of the Government's plans and efforts, through the Bureau of Reclamation, to conserve and furnish water for irrigation purposes for the public. Its necessity for this purpose greatly outweighs the danger that a trespassing child might drown therein.

### IV.

In 1939, the Government expended approximately $56,000 in enclosing the bulk of this canal that runs through the City of El Paso with a heavy mesh wire fence some six feet high. The main purpose of this fence was to prevent children from swimming in said canal.

### V.

The part of the canal where Roberto Avina, Jr., drowned is enclosed with such fence.

### VI.

Many warning signs have been placed on said fence by the Government, but many of them have been defaced and/or removed by trespassing boys.

### VII.

There were adequate warning signs on said fence when and where Roberto Avi-

na, Jr., climbed over said fence to swim in the canal.

## VIII.

Government agents have many times tried, usually unsuccessfully, to keep boys from swimming in this canal.

## IX.

In the vicinity of this drowning, the Government has erected a check gate across the canal, causing the water to be at least ten feet deep immediately above the gate. This deep water extends many hundred yards above the gate but, naturally, gradually becomes more shallow.

## X.

Adjacent to the check gate are gates that can be opened or closed, allowing more or less water to flow back to the Rio Grande River, thereby regulating the flow of the water down the canal as needed for irrigation purposes.

## XI.

When these gates are opened, allowing a large quantity of water to flow back to the Rio Grande River, there is a considerable whirlpool or undertow created. This undertow extends out about 20 feet from the gates, making this part of the water very dangerous.

## XII.

This canal carries quite a lot of water and flows with rather a swift current, which causes it to be dangerous to the same extent as all flowing streams are dangerous. This current and its dangers are open, apparent, and are usual to such streams.

## XIII.

Roberto Avina, Jr., climbed the fence and entered the canal to swim approximately 100 yards from the gates; at a point where the water was approximately eight feet deep and where the canal was flowing with its natural current. No particularly large amount of water was going to the river at the time, and the undertow which may have been near the gates did not cause or assist in causing his drowning.

## XIV.

Pedro Gasca, the gate keeper on duty at the time, warned this boy and his companions of the danger, and advised them to get out, but they ignored his warning. He owed them no further duty, if any.

## XV.

The Government at all times has exercised more than ordinary care to prevent children from swimming in this canal, and has never done any act of omission or commission that could be construed as an invitation, express or implied, for any of them to swim therein. This applies to Roberto Avina, Jr. The Government was not negligent.

## XVI.

No act of negligence was alleged or proved against any specific Government employee.

## XVII.

It was not alleged that any Government employee was negligent while "acting within the scope of his office or employment". Plaintiff elected to stand on allegations of negligence by "defendant", which was the United States Government.

## XVIII.

These parts of the plaintiff's pleading were duly excepted to by the Government, but the Court's ruling thereon was reserved until the close of the trial.

### Conclusions of Law

#### I.

█ Franklin Canal, being authorized, created, and maintained under authority of acts of Congress of the United States, is a Governmental function involving discretion, and is exempt from the provisions of the Tort Claims Act by Section 2680(a) Title 28, United States Code. Dalehite v. U. S., 346 U.S. 15, at page 33, 73 S.Ct. 956.

#### II.

█ Even if Franklin Canal could be deemed inherently dangerous, no liability

582

rests upon the Government by its ownership. Negligence by an agent must be established. Dalehite, supra; Hubsch v. U. S., 5 Cir., 174 F.2d 7; Eaton v. R. B. George Investments, Inc., Tex.Sup., 260 S.W.2d 567.

### III.

The pleading in this case is insufficient in alleging, generally, the "defendant" was negligent. Section 1346 (b) of the Act provides the Government is liable for certain torts if caused "by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment". Dalehite, supra.

### IV.

Since Roberto Avina, Jr., drowned in the canal 100 yards from the gates, where the canal was a naturally flowing stream, there was no hidden danger and, therefore, no attractive nuisance. 30 Texas Juris., Negligence, Sec. 210, page 930; 65 C.J.S., Negligence, § 29(12) j; Holt v. Fuller Cotton Oil Co., Tex. Civ.App., 175 S.W.2d 272.

Under the recent Supreme Court of Texas decision of Eaton, supra, this alone probably would not defeat recovery, but when coupled with the finding that the Government had used more than ordinary care to prevent such injury, the plaintiff cannot recover.

Judgment will accordingly be entered for the defendant, with costs taxed against plaintiff.